## J. R. JAMISON, COUNTY SUPERINTENDENT, *v*. J. A. SENTER.

PUBLIC SCHOOLS.   *Teacher.   Compensation.   Annulment of certificate.*

The annulment, by the county superintendent of public schools, of a teacher's certificate of qualification, without the concurrence of the local trustees, does not put an end to the contract of employment which the teacher is fulfilling, so as to deprive him of compensation, if, notwithstanding such revocation, he teaches to the end of the term.

APPEAL from the decision of Hon. J. A. GREEN, Judge of the First Circuit Court District, awarding a peremptory writ of *mandamus* on J. R. Jamison, county superintendent of education, commanding him to issue a pay-certificate to J. A. Senter for teaching a public school after his certificate of qualification had been revoked.

*Newman Cayce*, for the appellant.

The revocation of the teacher's certificate of qualification annuls his contract.   His qualification is an essential element

in the contract of employment, and he cannot recover for services rendered thereunder after the certificate has been annulled. 2 Story on Con., sect. 1337. Counsel then reviewed the public-school laws (Acts 1873, p. 3), contending that they, if properly interpreted, supported the position which he maintained.

*Blair & Clifton,* for the appellee.

Reviewing the school laws (Code 1871, sect. 2006 *et seq.;* Acts 1873, p. 3; Acts 1876, p. 209), the counsel argued that the annulment, by the county superintendent of education, of the teacher's certificate of qualification did not deprive him of the right to complete the existing contract of employment, and that he was entitled to be compensated for services rendered thereunder subsequently to such revocation.

SIMRALL, C. J., delivered the opinion of the court.

The merits of this controversy resolve themselves into one proposition, viz. : whether the annulment of a certificate of qualification to teach, by the county superintendent of the public schools, puts an end to the contract of employment which the teacher was fulfilling, so as to deprive him of compensation, if, notwithstanding such revocation, he teaches to the end of the term.

Sect. 2006 of the Code of 1871 contains two provisions pertinent to the subject: first, the county superintendent shall have general supervision over the schools; second, he shall examine and license all teachers, and shall have power to annul certificates of teachers who may prove in any respect unworthy.

The fifth section of the act of April 17, 1873, to " amend the laws in relation to public education " (Pamph. Acts, 3), empowers the " local trustees to *employ* teachers for their respective schools; and they [trustees] shall certify to the county superintendent the fact that such teacher has been employed. * * * Then the county superintendent shall make a con-

tract with teachers so employed," the form of which is given.

The sixth section authorizes the county superintendent, if any teacher employed neglects his duty, or by drunkenness or other sufficient cause renders himself unworthy, with the *concurrence* of *the trustees*, to annul *the contract* for the unexpired portion of the term, and discharge him from employment.

The seventh section imposes on the county superintendent the duty to verify the accounts of teachers for their monthly salary, and to issue a pay-certificate, which shall be presented to the clerk of the board of supervisors, * * * who shall issue his warrant on the county treasury. The employment of teachers is the joint act of the trustees and superintendent; each performs a certain duty, but the concurrence of both seems to be necessary. From those licensed by the superintendent to teach, the trustees make a selection; and when that has been done, the formal contract is made by the superintendent.

The licensing of teachers, and the formal consummation of the contracts to teach, are committed to the county superintendent. And, in furtherance of his duty of general supervision over the schools, and responsibility for the qualifications and fitness of those whom he has certified for employment, he has power, for cause, to annul the license. It would result from that, that after the license of a particular person had been revoked, such person could not *after that* be employed by the trustees.

But whilst the licensee was the holder of a certificate of qualification he might be employed; and if, pending the term of his employment, he should, for drunkenness or other unworthy conduct, become unfit for the duties of teacher, his *contract* for that term should be annulled by the concurrence of the trustees and the superintendent. Both must concur in order to put an end to an unfulfilled contract. The statute intrusts to the superintendent the power to certify as to qualifications,

and also, for cause, to withdraw the certificate; but the revocation does not vacate a partially unexecuted contract, unless the local trustees consent thereto.

The defence made by the respondent was, that the relator was addicted to the intemperate use of ardent spirits, and had been guilty of immoral conduct, for which causes he revoked his certificate of qualification ; and, therefore, he was not entitled to be paid for services thereafter rendered to complete his contract. The trustees did not participate in the act of revocation ; it seems they were opposed to it.

As we have seen, the superintendent could not, alone, cancel the contract with the relator. It follows, that he might lawfully continue in the performance of his duties ; and for the salary earned under the contract, after such act by the superintendent, he can demand the stipulated pay. After the vacation of the certificate, the relator was not competent to make a *new engagement* to teach, but could continue to execute an existing contract, unless the local trustees coöperated with the superintendent to vacate the contract.

Judgment affirmed.